IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MAILING AND SHIPPING SYSTEMS, INC., | § § § | |
| Plaintiff, | § § § | |
| v. | § | EP-12-CV-37-KC |
| | § | |
| NEOPOST USA, INC. d/b/a HASLER, | § § § | |
| Defendant. | § § | |

### ORDER

On this day, the Court considered Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 36, in the above-captioned case. For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

To cure potential prejudice to Defendant, however, trial in this case will be postponed. The Court will provide the parties with the opportunity to conduct limited discovery, file dispositive motions, and participate in alternative dispute resolution ("ADR"). The scope of all future discovery, dispositive motions, and ADR in this case will be confined strictly to matters relating to the two new claims raised in Plaintiff's proposed Second Amended Complaint. The claims previously raised in Plaintiff's First Amended Complaint will be addressed by the Court's forthcoming Order on Defendant's original Motion for Summary Judgment, ECF No. 29.

Accordingly, the Court's previous Scheduling Order, ECF No. 13, and Trial Preparation Order, ECF No. 14, are hereby **VACATED**. Modified deadlines for discovery, dispositive motions, and ADR are set forth below. The Court will specify a new trial date and new deadlines for the filing of the trial memoranda required by Local Rule CV-16(e) and (f) upon the

resolution of the parties' dispositive motions.

## I.     BACKGROUND[1]

On January 27, 2012, Plaintiff filed a petition and a request for a temporary restraining order in County Court at Law No. 3 in El Paso County, Texas. *See* Def.'s Notice of Removal 12, ECF No. 1. In its original petition, Plaintiff brought various claims against Defendant, each of which related to a dealership agreement that had governed business relations between Plaintiff and Defendant since 1988. *Id.* On February 6, 2012, Defendant filed a Notice of Removal and invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332. *Id.* at 3.

In accordance with Rule 16(b) of the Federal Rules of Civil Procedure, this Court issued a Scheduling Order on June 1, 2012. Scheduling Order, ECF No. 13. Pursuant to the parties' joint request, Plaintiff's deadline to file motions to amend its pleadings was set for June 11, 2012. *See* Report of Parties' Planning Meeting 4, ECF No. 8; Scheduling Order 1. On the day of the deadline, Plaintiff timely filed its First Amended Complaint, ECF No. 17. This First Amended Complaint did not include any specific counts, but generally repeated the allegations raised by Plaintiff's petition in state court.

On December 7, 2012, Defendant filed a Motion for Summary Judgment, in which Defendant addressed each of the claims reasonably discernible from the allegations in Plaintiff's First Amended Complaint. *See* Def.'s Mot. These included Plaintiff's claims for fraud, violations of the Deceptive Trade Practices Act ("DTPA"), violations of the duty of good faith and fair dealing, and two different breaches of contract. *Id.* at 10-19. The claims for breaches of contract included, first, a claim that Defendant had terminated the dealership agreement without

---

[1] Because many of the exhibits in the record lack page numbers of their own or are not numbered consecutively, this Order refers to the page numbers supplied at the top of each page of the record by the electronic docketing system. For the purposes of this Order, this convention is applied to all the parties' filings in this case, including the parties' pleadings, motions, and briefs.

providing adequate notice to Plaintiff and, second, a claim that Defendant had failed to prevent rival dealers of Defendant's postage meters and mailing machines from conducting business within Plaintiff's designated territory. *Id.* at 11-14.

Two weeks after Defendant's Motion for Summary Judgment was filed, on December 18, 2012, Defendant's vice president submitted to a deposition in Connecticut by Plaintiff's counsel. *See* Pl.'s Resp. 49, ECF No. 38; Pl.'s Reply 2, ECF No. 42. This deposition occurred more than forty days after the Court's deadline to conclude discovery on November 7, 2012. *See* Scheduling Order 1. As Plaintiff explains, however, Defendant voluntarily made its vice president available for the deposition pursuant to an "agreement of counsel." Pl.'s Reply 2. During this deposition, Defendant's vice president acknowledged that Defendant would continue to make use of the "customer information" previously used by Plaintiff during his time as Defendant's dealer. Pl.'s Resp. 63-66. Defendant's vice president confirmed that this "customer information" would ordinarily be supplied to the new dealer of Defendant's postage meters and mailing machines assigned to Plaintiff's territory. *Id.* at 66. The replacement dealer would then ordinarily be authorized to make sales to Plaintiff's former customers. *Id.*

In an apparently unrelated incident several weeks later on January 4, 2013, Plaintiff allegedly retrieved a document from Defendant's "DealerNet" website. *See* Pl.'s Reply 2-3, 5-6. According to Plaintiff, this document demonstrates that Defendant continues to owe Plaintiff $9,577.61 in unpaid commissions under the dealership agreement. *Id.* Plaintiff concedes that it was already able to access Defendant's website at an earlier stage of this litigation. *Id.* at 3. Plaintiff alleges, however, that the retrieved document's significance was never fully "discussed with counsel" until this late date. *Id.* at 3. Defendant has not yet acknowledged this retrieved document or discussed its significance.

3

Ten days later, on January 14, 2013, Plaintiff filed its Motion for Leave to File a Second Amended Complaint. In the proposed Second Amended Complaint, Plaintiff introduces two new claims based, first, on the deposition of Defendant's vice president on December 18, 2012, and, second, on the document allegedly retrieved from Defendant's website on January 4, 2013. In its first new claim, Plaintiff requests relief for Defendant's alleged breach of the dealership agreement by the sharing of Plaintiff's "customer data . . . with other dealers who were assigned to take over the Plaintiff's territory." Pl.'s Mot. 6. In its second new claim, Plaintiff requests that the Court award it $9,577.61 in "commissions earned but not paid" to Plaintiff under the dealership agreement. *See* Pl.'s Mot. 7; Pl.'s Resp. 94, 96-97; Pl.'s Reply 2-3.

Besides raising these two new claims for breach of contract, Plaintiff's Second Amended Complaint also maintains Plaintiff's original claims for breach of contract relating to Defendant's alleged failures to provide Plaintiff with sufficient notice of termination and prevent rival dealers' encroachment on Plaintiff's designated territory. Pl.'s Mot. 6. Plaintiff also maintains his claim regarding Defendant's breach of the duty of good faith and fair dealing. *Id.* at 7. Plaintiff's Motion explicitly waives, however, all its previous claims for fraud and DTPA violations. Pl.'s Mot. 1; *see also* Pl.'s Resp. 10.

In its Response, Defendant argues that Plaintiff's Motion for Leave to File a Second Amended Complaint should be denied under Rules 16(b) and 15(a) of the Federal Rules of Civil Procedure. *See* Def.'s Resp. 5-9, ECF No. 40. In Defendant's view, the Court should resolve this case based exclusively on the claims discernible from Plaintiff's First Amended Complaint, all of which were already addressed in Defendant's Motion for Summary Judgment on December 7, 2012. *See id.* at 10. Defendant's Reply in support of its Motion for Summary Judgment, filed on January 22, 2013, briefly refers to the two new claims raised in Plaintiff's

proposed Second Amended Complaint, but does not address either of these claims in detail.  *See* Def.'s Reply 9, 13 ECF No. 41.

## II. DISCUSSION

When a party files an untimely motion to amend the pleadings, a district court evaluates this motion under Rules 16(b) and 15(a) of the Federal Rules of Civil Procedure.  *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535-36 (5th Cir. 2003).  "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired.  Only upon the movant's demonstration of good cause to modify the scheduling order [under Rule 16(b)] will the more liberal standards of 15(a) apply to the district court's decision to grant or deny leave." *Id.*; *see also Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

### A. Rule 16(b)

Under Rule 16(b) of the Federal Rules of Civil Procedure, a party seeking to modify any aspect of a scheduling order must show good cause.  *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).  A district court therefore considers a party's untimely motion to amend the pleadings based on the following factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  *Fahim*, 551 F.3d at 348; *S&W Enters.*, 315 F.3d at 535-36.

Applying this four-factor balancing test, the Court finds that Plaintiff has shown good cause in this case to amend its pleading under Rule 16(b).  *See Fahim*, 551 F.3d at 348; *S&W Enters.*, 315 F.3d at 535-36.  Although the first factor weighs against granting Plaintiff's Motion to a limited extent, the other three factors weigh in favor of it.

### 1. Explanation for the failure to timely amend

Only the first of the four factors applicable under Rule 16(b), the "explanation for the failure to timely move for leave to amend," weighs against the granting of Plaintiff's Motion. *See Fahim*, 551 F.3d at 348; *S&W Enters.*, 315 F.3d at 535-36. Even this factor, however, weighs against the granting of Plaintiff's Motion only to a limited degree and only with respect to one of Plaintiff's two new claims.

Plaintiff does not provide a persuasive explanation for its failure to bring the new claim for "commissions earned but not paid" prior to the Court's deadline for amendments to the pleadings. *See* Pl.'s Resp. 94, 96-97; Pl.'s Reply 2-3. This new claim is based on a document allegedly retrieved from Defendant's "DealerNet" website. Pl.'s Resp. 94, 96-97; Pl.'s Reply 2-3. In its Reply, Plaintiff implies that this website was already accessible to Plaintiff prior to the filing of Defendant's Motion for Summary Judgment. *See* Pl.'s Reply 2-3. From its appearance, this website seems to provide "Account Status" summaries to any of Defendant's current dealers. *See id.* at 5-6. It therefore seems likely that Plaintiff could have accessed this website when Plaintiff was still a current dealer, and that this document would therefore have been available to Plaintiff long before the Court's deadline for amendments to the pleadings on June 11, 2012. *See* Scheduling Order. It also seems reasonable to assume that Plaintiff would have kept its own records of commissions paid and unpaid by Defendant, rather than relying entirely on Defendant's "DealerNet" as the only record of its commissions. Plaintiff has not, however, provided any further information on any of these questions. For its part, Defendant has never acknowledged or explained the significance of this website, Plaintiff's printed copy of the "Account Status" summary, or this document's reference to a "Total Open Amount" of $9,577.61. In the absence of any further information, therefore, the Court must conclude that the

first 16(b) factor weighs against Plaintiff's untimely request to bring a new claim for unpaid commissions, but only to a limited degree.

The first 16(b) factor does not, however, weigh against Plaintiff's request to bring its new "customer data claim." *See* Def.'s Resp. 6.  This second new claim is based on a contractual obligation that, according to Plaintiff, arises from the 2010 and 2011 versions of Defendant's dealership policy manual, as well as from a "Statement of Intent Regarding Ownership of Dealer Data" that also is allegedly a component of the dealership agreement. *Id.*; *see also* Pl.'s Mot. 6; Pl.'s Resp. 63-66, 78-84.  The dates of these documents indicate that they were likely in Plaintiff's possession or control for some time prior to the beginning of this litigation, and Plaintiff does not suggest otherwise. *See* Pl.'s Mot. 6; Pl.'s Resp. 63-66, 78-84.  Accordingly, as Defendant argues correctly, Plaintiff should have been aware of this alleged contractual obligation long before the Court's deadline to amend the pleadings. *See* Def.'s Resp. 6.

But it is not obvious, in the Court's view, that Plaintiff would necessarily have learned of Defendant's alleged breach of this contractual obligation prior to the deposition of Defendant's vice president. *See Sekil v. ADT Sec. Servs., Inc.*, No. H-08-0510, 2008 WL 4844209, at *2 (S.D. Tex. Nov. 3, 2008) (finding "sufficient" a movant's reason for failure to file a timely motion for leave to amend where the movant was "only recently able . . . to take [a relevant witness's] deposition").  At this deposition on December 18, 2012, Defendant's vice president explained that Defendant would indeed share Plaintiff's "customer information" with the dealer who took over dealership responsibilities in Plaintiff's designated territory.  Pl.'s Resp. 66.  More diligent discovery by Plaintiff would perhaps have revealed this fact long before the deposition of Defendant's vice president, which took place more than forty days after the Court's deadline to conclude discovery.  *See* Scheduling Order 1.  As Plaintiff explains, however, Defendant

voluntarily made its vice president available for this deposition pursuant to an "agreement of counsel." Pl.'s Reply 2.  Having arranged with Plaintiff to conduct the deposition at this late date, Defendant cannot now place all the blame for Plaintiff's "eleventh-hour motion to amend its complaint" on Plaintiff's lack of diligence.  *See* Def.'s Resp. 8.  The Court also recalls that Defendant's vice president "oversee[s] dealer sales throughout the United States" and appears to be located in Milford, Connecticut.  *See* Def.'s Mot., Aff. of Kevin Flood 1, 3, ECF No. 31.  Given this witness's considerable responsibilities and the distance at which he is situated from the site of this litigation, the Court is skeptical that Plaintiff's counsel could reasonably have taken this witness's deposition during the brief ten-day window between the issuance of the Scheduling Order and the deadline for amending the pleadings.  *See* Scheduling Order.

Therefore, the Court's consideration of the first 16(b) factor presents a divided picture.  Plaintiff does not provide a persuasive explanation for its failure to bring its new claim for $9,577.61 in "commissions earned but not paid" prior to the deadline.  *See* Pl.'s Resp. 94, 96-97; Pl.'s Reply 2-3.  However, because Defendant has never acknowledged the "DealerNet" website or explained when this information regarding unpaid commissions might first have been available to Plaintiff, this factor cannot weigh heavily in Defendant's favor.  By contrast, with respect to the new "customer data claim," the first 16(b) factor does not weigh against Plaintiff's Motion, because the witness whose deposition testimony provides the basis for this claim was apparently made available to Plaintiff long after the relevant deadline had passed.  *See* Pl.'s Resp. 66; Pl.'s Reply 2; Scheduling Order.

### 2.    Importance of the amendment

The second of the Rule 16(b) factors, "the importance of the amendment," weighs in favor of granting Plaintiff's Motion.  *See Fahim*, 551 F.3d at 348; *S&W Enters.*, 315 F.3d at 535-

36. As Plaintiff correctly argues, the amendments contained in the proposed Second Amended Complaint are particularly important "because of the preclusive effects of this litigation" under Texas law with respect to Plaintiff's two new claims.  *See* Pl.'s Mot. 2.

In determining the preclusive effect of a judgment, "federal courts must apply the law of the state from which the judgment emerged." *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096-97 (5th Cir. 1995) (citing *J.M. Muniz, Inc. v. Mercantile Tex. Credit Corp.*, 833 F.2d 541, 543 (5th Cir. 1987)); *see also Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000); *Union Pac. R.R. Co. v. Harris Cnty., Tex.*, 790 F. Supp. 2d 568, 58-821 (S.D. Tex. 2011). This case was originally filed in a court of the State of Texas, and there is no dispute that the dealership agreement and all claims in this case are governed by Texas law.  *See, e.g.*, Def.'s Notice of Removal 1, 12; Pl.'s First Am. Compl. ¶¶ 7-8; Def.'s Mot. 8, 11.

The Supreme Court of Texas has adopted the "transactional approach" to the doctrine of claim preclusion, as set forth in the Restatement (Second) of Judgments.  *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630-31 (Tex. 1992); *see also Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206-07 (Tex. 1999); *Crowder v. Am. Eagle Airlines, Inc.*, 118 F. App'x 833, 838 (5th Cir. 2004) (applying Texas law).  To decide whether a new claim arises out of the same transaction as a claim previously litigated—thereby precluding the new claim in future litigation—the transactional approach requires a court to consider the two claims' "relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992) (internal citation and quotation marks omitted).  This analysis is particularly straightforward in cases involving claims for breach of contract.  "Where there is a legal relationship, such as under a lease or contract, all claims arising from that relationship will arise from the same subject matter

9

and be subject to *res judicata*." *Sanders v. Blockbuster, Inc.*, 127 S.W.3d 382, 386 (Tex. App. 2004) (citing *Weiman v. Addicks-Fairbanks Rd. Sand Co.*, 846 S.W.2d 414, 419 (Tex. App. 1992)); *see also Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1342-43 (5th Cir. 1996); *S. Plains Switching, Ltd. Co. v. BNSF Ry.*, 255 S.W.3d 690, 699-700 (Tex. App. 2008); *Musgrave v. Owen*, 67 S.W.3d 513, 520 (Tex. App. 2002).

Under the transactional approach to claim preclusion, therefore, this Court's eventual judgment as to Plaintiff's claims for breaches of the dealership agreement would very likely preclude Plaintiff from any future litigation involving Defendant's alleged breaches of the same contract. *See Sanders*, 127 S.W.3d at 386; *Jones*, 82 F.3d at 1342. The preclusive effects of this litigation, therefore, render the amendments proposed by Plaintiff particularly "important" within the meaning of the second Rule 16(b) factor. *See Fahim*, 551 F.3d at 348; *S&W Enters.*, 315 F.3d at 535-36. That is, these amendments must be made during the present lawsuit or Plaintiff will likely be prevented from ever litigating these claims.

Moreover, the Texas courts' adoption of the transactional approach to claim preclusion in subsequent lawsuits is predicated explicitly on a liberal approach to the amendment of pleadings during the original lawsuit. As the Supreme Court of Texas explained in the *Barr* case, the transactional approach to claim preclusion is justified precisely because "[m]odern rules of procedure obviate the need to give parties two bites at the apple . . . . Discovery should put a claimant on notice of any need for alternative pleading. Moreover, if success on one theory becomes doubtful . . . , a party is free to seek a trial amendment." *Barr*, 837 S.W.2d at 631; *see also Alanis v. Valdespino*, No. 04-11-00122-CV, 2012 WL 1865498, at *6 (Tex. App. 2012) (same); *Steele v. Duke*, No. 10-10-00045-CV, 2012 WL 1034649, at *3 (Tex. App. 2012) (same).

Accordingly, because the preclusive effects of this litigation confer a particular

10

importance on Plaintiff's proposed amendments, the second Rule 16(b) factor weighs in favor of granting Plaintiff's Motion.  *See Fahim*, 551 F.3d at 348; *S&W Enters.*, 315 F.3d at 535-36.

### 3. Potential prejudice and availability of a continuance

Finally, the third and fourth factors applicable under Rule 16(b) of the Federal Rules of Civil Procedure, the potential for prejudice and the availability of a continuance, also weigh in favor of granting Plaintiff's Motion.  Although Plaintiff's Motion poses some potential for prejudice to Defendant, this prejudice is minimal and can be cured by postponing trial and providing additional opportunities for limited discovery, dispositive motions, and ADR in this case.  *See Fahim*, 551 F.3d at 348; *S&W Enters.*, 315 F.3d at 535-36.

Defendant identifies three reasons that it would be prejudiced should this Court grant Plaintiff's Motion.  First, Defendant "would be prejudiced given all of the time and money . . . spent litigating this matter based on Plaintiff's previous allegations."  Def.'s Resp. 8.  Second, Plaintiff's proposed Second Amended Complaint represents an "end-run" around summary judgment and "an attempt to conduct trial by ambush because the late amendment precludes [Defendant] from taking discovery relevant to Plaintiff's new allegations . . . ."  *Id.* at 2, 8.  Third, even if the Court were to grant a continuance of the trial schedule, "allowing amendment now would . . . require [Defendant] to conduct new discovery and file a new motion for summary judgment, thereby unduly ramping up litigation costs and expenditures."  *Id.* at 8.

Given the particular circumstances of these proceedings, however, these arguments are not persuasive.  First, "the time and money" spent by Defendant on its original Motion for Summary Judgment have not gone to waste.  *See id.*  Several weeks after receiving Defendant's Motion, Plaintiff explicitly waived its previous claims of fraud and DTPA violations.  Pl.'s Mot. 1; *see also* Pl.'s Resp. 10.  Additionally, Defendant's arguments regarding its entitlement to

summary judgment on Plaintiff's remaining claims have prompted a detailed response from Plaintiff and will enable the Court to address the viability of Plaintiff's claims in its forthcoming Order. *See* Def.'s Mot. 10-19; Pl.'s Resp. 3-8.

Second, the postponement of trial will prevent any possibility of an "end-run" around summary judgment or "trial by ambush." Def.'s Resp. 2, 8. By providing renewed opportunities for dispositive motions, the Court can ensure that Defendant has a fair opportunity to address both of Plaintiff's new claims for breach of contract in a future motion for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure. Additionally, by vacating the previous trial preparation dates until the resolution of the parties' dispositive motions, the Court can ensure that Defendant will also have adequate opportunity to prepare for trial based on Plaintiff's new claims.

Finally, additional discovery, dispositive motions, and ADR will not "unduly" increase litigation costs, because most of these costs would inevitably have resulted had Plaintiff originally included its two new claims for breach of contract in its First Amended Complaint. *See id.* at 8. The Court sees no reason why the timing of these claims should significantly increase Defendant's expenses in responding to them. Moreover, because the scope of parties' future discovery, dispositive motions, and ADR will be confined strictly to the two new claims, the parties' new research and briefing will not be duplicative of their previous efforts.

Therefore, based on its consideration of the four-factor balancing test applicable under Rule 16(b), the Court finds that Plaintiff has shown sufficient cause to amend its pleading in this case. *See Fahim*, 551 F.3d at 348; *S&W Enters.*, 315 F.3d at 535-36.

  **B.**  **Rule 15(a)**

Under Rule 15(a) of the Federal Rules of Civil Procedure, a district court should "freely

give leave" for a party to amend the pleadings "when justice so requires." Fed. R. Civ. P. 15(a). This decision is within the "sound discretion" of the district court, but the request should not be denied under Rule 15(a) "unless there is a substantial reason to do so." *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). Indeed, Rule 15(a) "evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (quoting *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)). In particular, courts consider whether there is evidence of the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc." *Whitmire v. Victus Ltd.*, 212 F.3d 885, 889 (5th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, there is insufficient evidence of delay, dilatory conduct, ineffective previous amendments, prejudice, or the amendments' futility for the Court to deny Plaintiff's Motion under Rule 15(a). *See Foman*, 371 U.S. at 182; *Whitmire*, 212 F.3d at 889. In its "sound discretion" under Rule 15(a), this Court therefore finds that justice requires that Plaintiff be granted leave to file its Second Amended Complaint. *Jacobsen*, 133 F.3d at 318 (quoting *Leffall*, 28 F.3d at 524).

In the Court's view, there is not sufficient evidence of undue delay or dilatory conduct on Plaintiff's part to warrant denying leave to amend the pleadings in this case. When Plaintiff filed its Motion, this case had been pending before this Court for only eleven months. *See* Pl.'s Mot.; Def.'s Notice of Removal. Additionally, although Plaintiff's two new claims were raised seven months after the relevant deadline, they were raised less than one month after Defendant's vice

president provided the basis for one of Plaintiff's two new claims in deposition testimony, for which Defendant's counsel had voluntarily made this witness available. *See* Pl.'s Reply 2; Pl.'s Resp. 63-66. Accordingly, shortly after this new testimony indicated the basis for an additional claim, Plaintiff "promptly moved to amend." *Whitmire*, 212 F.3d at 889-90; *see also Sekil*, 2008 WL 4844209, at *2 (finding a movant's reason for failure to file a timely motion for leave to amend "sufficient" where the movant was "only recently able . . . to take [a relevant witness's] deposition").

Nor have there been "repeated failures to cure deficiencies by amendments previously allowed" in this case. *See Foman*, 371 U.S. at 182; *Whitmire*, 212 F.3d at 889. Plaintiff has only amended its pleadings once during this case. This amendment was made on June 11, 2012, the day of this Court's original deadline to amend the pleadings. *See* Pl.'s First Am. Compl.; Scheduling Order. There have been no motions to dismiss filed in this case based on any deficiencies in Plaintiff's pleadings, and the parties have not previously had cause to cure such deficiencies through amendments. As to the prejudice posed to Defendant by the amendments, the Court has already explained that this prejudice is minimal. *See Foman*, 371 U.S. at 182; *Whitmire*, 212 F.3d at 889. Moreover, this prejudice can be cured by postponing trial and providing renewed opportunities for limited discovery, dispositive motions, and ADR.

Finally, the Court finds that granting Plaintiff's Motion would not be futile. In this context, the "futility" of a new claim indicates that "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling*, 234 F.3d at 873; *see also Woodrow Wilson Constr. Co., Inc. v. Hancock Bank of La.*, 61 F. App'x 919, 2003 WL 1109211, at *1 (5th Cir. 2003). Here, Plaintiff has sufficiently pleaded both of its two new claims for breach of contract. That is, Plaintiff's new claims for unpaid commissions and for Defendant's failure to compensate

Plaintiff for its customer information each discernibly propose "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. 2005)).

In its Response, Defendant makes no argument that either new claim has failed to satisfy applicable pleading standards. *See* Def.'s Resp. 9. In fact, Defendant does not address the futility of Plaintiff's claim for unpaid commissions in any way. *See id.* Defendant has briefly characterized Plaintiff's claim to compensation for customer data as "meritless on its face," based on an argument that any obligations created by the 2010 and 2011 versions of Defendant's dealership policy manual necessarily apply only to current dealers, whereas Plaintiff was already a former dealer when Defendant allegedly transferred Plaintiff's customer information to another dealer. *See id.*; Def.'s Reply 7-8. As Defendant acknowledges, however, neither party has had an adequate opportunity to address "in detail" the possible alternative interpretations of the dealership agreement's relevant provisions. *See* Def.'s Reply 9 (emphasizing that Defendant's arguments regarding this new claim have been "constrained by the page limitations on its Reply"). Additionally, Defendant makes no reference at all to the "Statement of Intent Regarding Ownership of Dealer Data," on which Plaintiff has also based its claim to compensation for customer data. *See* Pl.'s Resp. 82-84. Accordingly, the Court finds that neither of Plaintiff's new claims is futile under Rule 15(a).

For these reasons, the Court concludes that there is insufficient evidence of delay, dilatory conduct, ineffective previous amendments, prejudice, or the amendments' futility in this case for the Court to deny Plaintiff's Motion. *See Foman*, 371 U.S. at 182; *Whitmire*, 212 F.3d

at 889.  In the Court's sound discretion under Rule 15(a), and based on good cause shown under Rule 16(b), Plaintiff's Motion is therefore **GRANTED**.

### III.   CONCLUSION

For the reasons set forth above, the Court **ORDERS** that Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 36, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Court's previous Scheduling Order, ECF No. 13, and Trial Preparation Order, ECF No. 14, are **HEREBY VACATED**.

**IT IS FURTHER ORDERED** that the parties will be permitted an additional opportunity to conduct limited discovery, file dispositive motions, and participate in ADR with respect to matters relating to the two new claims for breach of contract in Plaintiff's proposed Second Amended Complaint.  These consist only of Plaintiff's claims for unpaid commissions and compensation for Plaintiff's customer data.  All claims previously raised in Plaintiff's First Amended Complaint will be addressed by the Court's forthcoming Order on Defendant's original Motion for Summary Judgment, ECF No. 29.  The parties will adhere to the following modified deadlines:

> Discovery Deadline:          June 3, 2013
>
> Dispositive Motions Deadline:          July 1, 2013

The Court will set a new trial date and trial preparation deadlines upon the resolution of the parties' dispositive motions.

**IT IS FURTHER ORDERED** that the parties shall participate in and complete a second session of formal ADR by no later than July 1, 2013.  The parties shall provide the Court with a written notice identifying the name and address of the ADR provider and the date of the scheduled ADR session by no later than May 1, 2013.

**SO ORDERED**.

**SIGNED this 28th day of March, 2013.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE