IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MAILING AND SHIPPING SYSTEMS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | EP-12-CV-37-KC |
| NEOPOST USA, INC. d/b/a HASLER, | § § § § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Defendant's Motion for Summary Judgment, ECF No.

29.  Defendant filed the instant Motion on December 7, 2012, before Plaintiff was granted leave

to file its Second Amended Complaint.  *See* Order on Pl.'s Mot. to File a Second Am. Compl.,

ECF No. 43.  Defendant's Motion, therefore, addresses only those claims that were originally

discernible from Plaintiff's First Amended Complaint.  Importantly, in the time since Defendant

filed the present Motion, Plaintiff has explicitly waived its original claims for fraud and DTPA

violations.  *See* Pl.'s Mot. 1, ECF No. 36; Pl.'s Resp. 10, ECF No. 38.  The present Order,

therefore, need only address those remaining claims in Plaintiff's First Amended Complaint for

breaches of contract and violations of the duty of good faith and fair dealing under Texas law.

For the reasons set forth below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## I.      BACKGROUND[1]

The current litigation relates to a dealership agreement that governed business relations

---

[1] Because many of the exhibits in the record lack page numbers of their own or are not numbered consecutively, this Order refers to the page numbers supplied at the top of each page of the record by the electronic docketing system. For the purposes of this Order, this convention is applied to all the parties' filings in this case, including the parties' pleadings, motions, and briefs.

between Plaintiff and Defendant for approximately twenty-four years.  From 1988 until 2012,

Plaintiff was authorized under this dealership agreement to sell, install, and maintain Defendant's

postage meters and mailing machines within a designated territory in Texas and New Mexico.

As explained below in further detail, Defendant and Plaintiff do not dispute any questions

of fact relevant to the task currently before the Court.  The parties' only material disagreements

relate to certain questions of law.  That is, the parties dispute the meaning and effect of certain

language within the dealership agreement.  In particular, this language relates to the length of the

pre-termination period of notice required under the dealership agreement and the alleged

"exclusivity" of Plaintiff's former territory.  The parties also disagree as to the applicability and

effect of the duty of good faith and fair dealing under Texas law.  In the circumstances of this

case, each of these questions can be resolved as a matter of law.

A.      The Dealership Agreement

On February 24, 1988, Plaintiff entered into a dealership agreement with Defendant's

predecessor, International Mailing Systems, Inc./Hasler, to become an authorized dealer of

postage meters and mailing machines.  *See* Def.'s Mot ¶ 1; Pl.'s Resp. ¶ 1;[2] Def.'s App., Ex. A

("Igoe Deposition"), at 4-5, ECF No. 30-1; Def.'s App., Ex. B ("Appointment Letter"), at 2, ECF

No. 30-2.  The parties do not dispute that Defendant succeeded to the dealership agreement with

Plaintiff in or about 2001, when Defendant acquired International Mailing Systems, Inc./Hasler.

Def.'s Mot ¶ 5; Pl.'s Resp. ¶ 5; Igoe Dep. 13-14.

Under the dealership agreement, Plaintiff would sell Defendant's equipment to customers

---

[2] It appears that the numbered paragraphs designated as Plaintiff's "Response to Proposed Undisputed Facts" do not
correspond to the numbered paragraphs in the document designated as Defendant's "Proposed Undisputed Facts."
*Compare* Pl.'s Resp. ¶¶ 1-22, *with* Def.'s Proposed Undisputed Facts ¶¶ 1-25, ECF No. 32.  Rather, Plaintiff's
"Response to Proposed Undisputed Facts" apparently responds to the numbered paragraphs of the "Statement of
Facts" included at the beginning of Defendant's Motion for Summary Judgment.  *Compare* Pl.'s Resp. ¶¶ 1-22, *with*
Def.'s Mot. ¶¶ 1-22.

within Plaintiff's designated territory and then install and maintain that equipment.  *See* Pl.'s

Resp. 51-53 ("Flood Deposition").  Plaintiff's designated territory included several counties in

Texas and New Mexico.  Def.'s Mot. ¶ 4; Pl.'s Resp. ¶ 4.  The parties agree that the terms of the

dealership agreement were never memorialized in a single unified document, but rather arose

through a course of dealing and a variety of documents, correspondence, and "dealer policy

manuals" that changed hands between the parties regularly during their long business

relationship.  *See* Igoe Dep. 5-10; Flood Dep. 54-56.  The parties agree that certain of these items

created contractual obligations that are relevant to Defendant's Motion, although the nature of

these contractual obligations is disputed.

Five of these items are of particular importance to the Court's present task.  First, at the

beginning of its participation in the dealership agreement on February 24, 1988, Plaintiff

received from Robert Hahn, a regional manager for Defendant's predecessor, a letter appointing

Plaintiff as "a factory authorized dealer for IMS/Hasler postage meters and mailing machines."

*See* Appointment Letter.  The letter provided that "[t]his arrangement is subject to termination by

us upon 30 days written notice to you."  *Id.*

Second, Plaintiff received a Dealer Policy Manual in 2011 containing the following

language: "Except as otherwise provided in a written agreement with Dealer, [Defendant] shall

give Dealer ninety (90) days prior written notice of intent to terminate Dealer by registered mail,

return receipt requested (unless a shorter time frame is mutually agreed upon by [Defendant] and

the Dealer)."  Def.'s App., Ex. E ("2011 Manual Notice Provision"), at 13, ECF No. 30-2.

Third, Plaintiff also received from the regional manager for Defendant's predecessor a

document "[e]ffective 2/15/88" providing that a designated list of "TEXAS counties" and "NEW

MEXICO counties have been assigned to [Plaintiff's] *non-exclusive territory*."  Def.'s App., Ex.

3

C ("Territory Assignment Document"), at 5, ECF No. 30-2 (emphasis added). This document did not contain any definition for the term, "non-exclusive." *See id.*

Fourth, the 2010 and 2011 versions of Defendant's Dealer Policy Manual both include the following language: "[Defendant] will not use customer information gathered from meter rental, online services, neoFunds, or Totalfunds to sell supplies, products, or maintenance contracts into an authorized . . . dealer's *exclusive territory* without fair and reasonable compensation to the dealer that initially supplied the information." Pl.'s Resp. 78 ("2010 Manual Information Provision"), 80 ("2011 Manual Information Provision") (emphasis added). This document did not contain any definition for the term, "exclusive."

Fifth, according to the deposition testimony of Defendant's vice president, the 2009 version of Defendant's Dealer Policy Manual included the following language: "Dealers will not sell, lease, or rent new or refurbished products or solicit rental contracts covering postal meters for delivery in any territory other than the territory described in the Dealer's Sales Agreement." Flood Dep. 55. The Court has not been provided with any copy of this page from the 2009 version of Defendant's policy manual, but the parties do not dispute the accuracy of this quoted language.

### B. Encroachments by Rival Dealers

Plaintiff's owner and only officer, John Igoe, testifies in an affidavit that certain rival dealers, Accurate Business Machines and General Mailing Systems, periodically would "encroach" upon Plaintiff's designated territory by conducting business in San Angelo, Midland, and southern New Mexico. Pl.'s Resp. 94 ("Igoe Affidavit"). Plaintiff has also alleged throughout this litigation that Defendant "fail[ed] to take action" to prevent these encroachments. *See* Pl.'s First Am. Compl. ¶ 6, ECF No. 17; Pl.'s Second Am. Compl. ¶¶ 8, 10. These

allegations were set forth in more detail in Plaintiff's Second Amended Complaint, but were already clearly discernible in Plaintiff's First Amended Complaint. *Compare* Pl.'s First Am. Compl. ¶ 6, *with* Pl.'s Second Am. Compl. ¶¶ 8, 10. Defendant does not deny that such encroachments occurred, but argues that Defendant had no obligation under the dealership agreement to prevent such encroachments. *See* Def.'s Reply 10-11, ECF No. 41.

### C. Termination of the Agreement

The parties agree that Defendant set quotas for its dealers to meet, and that Plaintiff had fallen more than 75% below its quotas on various occasions between 2009 and 2011. *See* Def.'s Mot. ¶¶ 6-15; Pl.'s Resp. ¶¶ 6-15 (contesting Defendant's figures as to 2010, but conceding as to 2009 and 2011). On August 30, 2011, Defendant sent Plaintiff a "performance warning" notifying Plaintiff that it was not on track to meet its quotas for 2011. Def.'s Mot. ¶ 12; Pl.'s Resp. ¶ 12; Igoe Dep. 15-16. As Defendant's Dealer Policy Manual provides, "[t]he Dealer's failure to meet its assigned sales quota is cause for [Defendant], upon written notice to Dealer, to terminate such dealership." Def.'s Mot. ¶ 16; Pl.'s Resp. ¶ 16; Igoe Dep. 9-11.

By letter dated December 7, 2011, and received by Plaintiff on December 12, 2011, Defendant gave notice that it would terminate Plaintiff's dealership agreement on January 31, 2012. Pl.'s First Am. Compl., Ex. 2 ("Termination Letter"), at 8, ECF No. 17; Def.'s Mot. ¶¶ 21-22; Pl.'s Resp. ¶¶ 21-22. Only days before the termination was to take effect, Plaintiff filed a petition and a request for a temporary restraining order in County Court at Law No. 3 in El Paso County, Texas, on January 27, 2012. *See* Def.'s Notice of Removal 12, ECF No. 1. In its original petition, Plaintiff brought various claims against Defendant, each of which related to the dealership agreement. *Id.* On February 6, 2012, Defendant filed a Notice of Removal and invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332. *Id.* at 3. On June 11, 2012,

Plaintiff timely filed its First Amended Complaint.

On December 7, 2012, Defendant filed its Motion for Summary Judgment, in which

Defendant addressed all of the claims discernible from Plaintiff's First Amended Complaint.  *See*

Def.'s Mot.  These included Plaintiff's claims for fraud, violations of the Deceptive Trade

Practices Act ("DTPA"), violations of the duty of good faith and fair dealing, and two different

breaches of contract.  *See id.* at 11-19.  The claims for breach of contract included, first, a claim

that Defendant had terminated the dealership agreement without providing adequate notice to

Plaintiff and, second, a claim that Defendant had failed to prevent rival dealers of Defendant's

products from conducting business within Plaintiff's designated territory.  *See id.* at 12-14.

On January 14, 2013, Plaintiff filed its Motion for Leave to File a Second Amended

Complaint.  In the proposed Second Amended Complaint, Plaintiff introduces new claims for

misuse of customer data and failure to pay commissions under the dealership agreement.  *See*

Order on Pl.'s Mot. to File a Second Am. Compl.  Neither of these two new claims is addressed

in the present Order.  Besides raising Plaintiff's two new claims regarding unpaid commissions

and customer data, the Second Amended Complaint also explicitly waives all its previous claims

based on fraud and DTPA violations.  Pl.'s Mot. 1; *see also* Pl.'s Resp. 10.  The Second

Amended Complaint maintains, however, Plaintiff's original claims for breach of contract

relating to Defendant's alleged failures to provide Plaintiff with sufficient notice of termination

and prevent rival dealers' encroachment on Plaintiff's designated territory, as well as Plaintiff's

claims based on the duty of good faith and fair dealing.  Pl.'s Mot. 6-7.

## II.     DISCUSSION

### A.     Standard

A court must enter summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Weaver v. CCA*

*Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "A fact is 'material' if its resolution in favor of

one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star*

*State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232

F.3d 473, 477 (5th Cir. 2000) (per curiam)).  A dispute about a material fact is genuine only "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*,

85 F.3d 187, 189 (5th Cir. 1996).

   "[The] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*,

477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  To show

the existence of a genuine dispute, the nonmoving party must support its position with citations

to "particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory

answers, or other materials[,]" or show "that the materials cited by the movant do not establish

the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible

evidence to support the fact."  Fed. R. Civ. P. 56(c).

   A court resolves factual controversies in favor of the nonmoving party; however, factual

controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a

'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Further, when reviewing the evidence, a court must draw all reasonable inferences in favor of the

nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B.      Analysis

In this case, the parties dispute the meaning and effect of certain language within the documents comprising the dealership agreement. In particular, they dispute whether the dealership agreement required Defendant to notify Plaintiff thirty days or ninety days in advance of terminating the contract. In Plaintiff's view, Defendant was obligated to give notice ninety days in advance, and therefore breached the parties' contract by giving notice only fifty days in advance. The parties also dispute whether Defendant had a contractual obligation to prevent encroachments by rival dealers on Plaintiff's designated territory. In Plaintiff's view, Defendant had such a contractual obligation, and therefore breached the parties' contract by failing to prevent these encroachments. Finally, the parties dispute whether the dealership agreement was subject to a duty of good faith and fair dealing under Texas law, and whether Defendant failed to act in conformity with this duty during its business relationship with Plaintiff.

In the circumstances of this case, each of these disputes must be resolved in Defendant's favor as a matter of law. Defendant is therefore entitled to summary judgment as to all questions of liability addressed in this Order.

#### 1.      Breaches of contract

In Texas, there are four elements to a claim for breach of contract: "(1) the existence of a

valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract

by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v.*

*TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443,

450 (Tex. App. 2005)).  The parties in this case do not dispute the existence of a valid contract,

which remained in effect between the parties from 1988 until 2012.

There is no evidence before the Court, however, that this contract has been breached.  As

a matter of law, this contract does not contain either of the two obligations that Plaintiff

proposes.  The dealership agreement did not require Defendant to provide Plaintiff with notice

ninety days in advance of terminating the contract or to prevent territorial encroachment by

Plaintiff's rival dealers.  Defendant is therefore entitled to summary judgment that it did not

breach the dealership agreement on either of these two grounds.  *See Celotex Corp.*, 477 U.S. at

322-23; *Weaver*, 529 F.3d at 339.

### i.        Failure to provide adequate notice of termination

It is undisputed that Defendant notified Plaintiff of the dealership agreement's

termination no later than December 12, 2011, which was fifty days prior to the effective date of

termination on  January 31, 2012.  *See* Def.'s Mot. ¶¶ 21-22; Pl.'s Resp. ¶¶ 21-22; Termination

Letter.  In Defendant's view, this satisfied the thirty-day notice requirement imposed by the

dealership agreement.  Def.'s Mot. 12.  By contrast, Plaintiff argues that the dealership

agreement provided for a ninety-day notice period based on the 2011 version of the Dealer

Policy Manual.  Pl.'s Mot. 4-5.

By its own terms, the 2011 Dealer Policy Manual contemplates an exception to the

ninety-day notice period: "*Except as otherwise provided in a written agreement with Dealer,*

[Defendant] shall give Dealer ninety (90) days prior written notice of intent to terminate Dealer

by registered mail, return receipt requested (*unless a shorter time frame is mutually agreed upon by [Defendant] and the Dealer.*).” 2011 Manual Notice Provision 13 (emphasis added).  The parties dispute, however, whether the Appointment Letter sent to Plaintiff by Defendant’s predecessor in 1988 constitutes a “written agreement” within the meaning of this exception, which would therefore give rise to a “a shorter time frame . . . mutually agreed upon by [Defendant] and the Dealer.”  *See id.*  Referring to the newly formed dealership agreement, the Appointment Letter explained that “[t]his arrangement is subject to termination by [Defendant’s predecessor] upon 30 days written notice to [Plaintiff].”  *See* Appointment Letter.

The parties’ dispute over the meaning of the 2011 Dealer Policy Manual’s exception to the ninety-day notice period must be resolved according to the rules of contract interpretation applicable under Texas law.  There is no disagreement that the dealership agreement and all claims in this case are governed by Texas law.  *See, e.g.*, Def.’s Notice of Removal 1, 12; Pl.’s First Am. Compl. ¶¶ 7-8; Def.’s Mot. 8, 11.  When interpreting a contract under Texas law, the Court “must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.”  *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333-34 (Tex. 2011) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).  “Only where a contract is ambiguous may a court consider the parties’ interpretation and admit extraneous evidence to determine the true meaning of the instrument.”  *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450-51 (Tex. 2008); *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).  However, “extraneous evidence is not admissible to *create* a contractual ambiguity.”  *Evergreen Nat’l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 676 (Tex. App. 2003) (citing *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)) (emphasis added).  “If a

written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Kelley-Coppedge, Inc.*, 980 S.W.2d at 464 (quoting *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

The term, "agreement," as used in the 2011 Dealer Policy Manual's exception to the ninety-day notice period, does have a "definite or certain legal meaning." *See Kelley-Coppedge, Inc.*, 980 S.W.2d at 464. As explained by the Texas Supreme Court, "an 'agreement' refers to a 'manifestation of mutual assent on the part of two or more persons.'" *Martin v. Martin*, 326 S.W.3d 741, 746 (Tex. 2010) (quoting the Restatement (Second) of Contracts § 3 (1981)); *see also Chen v. Highland Capital Mgmt., L.P.*, No. 3:10-CV-1039, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012); *Lopez v. Kempthorne*, No. H-07-1534, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010).

Because the Appointment Letter issued in 1988 did constitute a "manifestation of mutual assent," it was therefore an "agreement." *See Martin*, 326 S.W.3d at 746. Defendant's predecessor issued the Appointment Letter in order "to confirm" that the parties' "mutually beneficial relationship" had commenced. *See* Appointment Letter. Defendant's predecessor demonstrated its own assent through the regional manager's signature, and acknowledged Plaintiff's assent with the following language: "We are pleased that your company will be representing us and we appreciate your confidence in our products." *See id.* This letter therefore constitutes a written manifestation of mutual assent under Texas law, even though it lacks Plaintiff's signature. *See Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) (citing *Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955)); *see also In re Bunzl USA, Inc.*, 155 S.W.3d 202, 210 (Tex. App. 2004) ("[A]

proper signature is by no means the only way a party can manifest assent to a contract.")
(internal citations omitted); *ABB Kraftwerke AG v. Brownsville Barge & Crane*, 115 S.W.3d
287, 293 (Tex. App. 2003) ("[S]ignatures are not a required factor in the making of a valid
contract.").

In addition to the acknowledgment of Plaintiff's assent by Defendant's predecessor in the
text of the Appointment Letter, Plaintiff's assent to the Appointment Letter's terms is confirmed
by Plaintiff's own subsequent "actions and conduct"[3] over the life of the dealership agreement.
*See R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005); *Haws &
Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972);
*KW Constr. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 885 (Tex. App.
2005).  Indeed, Plaintiff itself emphasizes this proposition in seeking to invoke the benefits of the
dealership agreement.  *See, e.g.*, Pl.'s Resp. 5 ("Nevertheless, the parties did have a contract . . .
as reflected by their conduct . . . .  Plaintiff, the Defendant, and its predecessors dealt with each
other for 24 years with the Plaintiff buying equipment . . . from Defendant . . . and reselling the
merchandise to its customers.") (internal citations omitted).

Accordingly, Defendant has pointed to evidence in the record that the Appointment
Letter was a written agreement falling within the dealership agreement's exception to the ninety-
day notice period, that the contract therefore required only thirty days of notice prior to
termination, and that Defendant actually gave Plaintiff notice fifty days prior to termination.

---

[3]  The Court emphasizes that it does not look to the conduct of either party for the purpose of interpreting the
language of the Appointment Letter.  Like the Dealer Policy Manual, the Appointment Letter is unambiguous on its
face.  *See Kelley-Coppedge, Inc.*, 980 S.W.2d at 464 ("If a written contract is so worded that it can be given a
definite or certain legal meaning, then it is not ambiguous.").  Rather, Plaintiff's conduct is relevant in this case only
to the issue of contract formation, as distinct from the issue of contract interpretation.  *See R.R. Mgmt. Co.*, 428 F.3d
at 222.  That is, the Court looks to Plaintiff's conduct only for the purpose of confirming that an "agreement" did
take place in 1988, as contemplated by the Dealer Policy Manual.

Defendant has therefore carried its initial burden at the summary judgment stage to show that there is no issue of fact regarding Plaintiff's first claim for breach of contract. *Celotex*, 477 U.S. at 323; *Wallace*, 80 F.3d at 1046-47. Plaintiff, by contrast, has failed to "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial" as to this claim for breach of contract. *See Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1046-47. Accordingly, Defendant is entitled to judgment as a matter of law that Defendant did not breach the dealership agreement by providing insufficient notice of termination. *See Celotex Corp.*, 477 U.S. at 322-23; *Weaver*, 529 F.3d at 339.

### ii.    Failure to prevent territorial encroachment by rival dealers

With respect to Plaintiff's second claim for breach of contract, Defendant argues that it had no contractual obligation to prevent rival dealers from conducting business within Plaintiff's designated territory. Def.'s Mot. 3. It is undisputed that such encroachments did occur from time to time during the effective period of the dealership agreement. *See* Def.'s Reply 10-11. Plaintiff therefore asks this Court to conclude that Defendant breached the contract by "failing to take action" to prevent these encroachments. *See* Pl.'s First Am. Compl. ¶ 6; Pl.'s Second Am. Compl. ¶¶ 8, 10.

After reviewing the submissions of the parties, however, the Court can find no language in the contract that could create such a contractual obligation. In what appears to be Plaintiff's initial assignment of territory in 1988, the regional manager for Defendant's predecessor described Plaintiff's designated territory in Texas and New Mexico as "non-exclusive territory." *See* Territory Assignment Doc. Additionally, in his deposition testimony, Plaintiff's owner and only officer, John Igoe, concedes that he was never told verbally by any agent of Defendant or Defendant's predecessor that Plaintiff's territory was "exclusive." Igoe Dep. 20.

Plaintiff argues that such a contractual obligation may be found in the 2009 version of Defendant's Dealer Policy Manual, which included the following language: "Dealers will not sell, lease, or rent new or refurbished products or solicit rental contracts covering postal meters for delivery in any territory other than the territory described in the Dealer's Sales Agreement." *See* Pl.'s Resp. 6 (quoting Flood Dep. 55 (reading from the 2009 version of Defendant's Dealer Policy Manual)).  By its own terms, however, this language does not place any contractual obligations on Defendant.  On the contrary, it places a contractual obligation on Defendant's dealers, such as Plaintiff.  Under the language of this provision, a dealer such as Plaintiff would breach the dealership agreement by conducting business outside of its designated territory.  But nothing about this language suggests that Defendant was therefore obligated to police the boundaries of these designated territories on behalf of the dealers.  To imply such an obligation from this language would violate the rule of Texas law that any contract must be interpreted "in accordance with its plain language."  *See Beaumont Rice Mill, Inc. v. Mid-Am. Indem. Ins. Co.*, 948 F.2d 950, 951 (5th Cir. 1991) (citing *General Am. Indem. Co. v. Pepper*, 339 S.W.2d 660, 661 (Tex. 1960)); *see also LeMeilleur v. Monumental Life Ins. Co.*, 419 F. App'x 451, 453 (5th Cir. 2011); *In re Hoover, Bax & Slovacek, L.L.P.*, 6 S.W.3d 646, 651 (Tex. App. 1999).

By contrast, a second provision cited by Plaintiff from the 2010 and 2011 versions of Defendant's Dealer Policy Manual does place a contractual obligation on Defendant with respect to "exclusive territory."  *See* Pl.'s Resp. 7.  This language reads as follows: "[Defendant] will not use customer information gathered from meter rental, online services, neoFunds, or Totalfunds to sell supplies, products, or maintenance contracts into an authorized . . . dealer's *exclusive territory* without fair and reasonable compensation to the dealer that initially supplied the information."  2010 Manual Information Provision 78 (emphasis added); *see also* 2011 Manual

Information Provision 80 (same).  This language does not, however, require Defendant to "take action" to prevent rival dealers from conducting business in the "dealer's exclusive territory." *See* Pl.'s First Am. Compl. ¶ 6; Pl.'s Second Am. Compl. ¶ 8, 10.  Rather, this language requires Defendant to pay "fair and reasonable compensation" for the use of "customer information . . . initially supplied" by a dealer when sales or maintenance contracts are made within that dealer's territory.  *See* 2010 Manual Information Provision 78 (emphasis added); *see also* 2011 Manual Information Provision 80 (same).  No evidence currently in the record suggests that either of the rival dealers, Accurate Business Machines and General Mailing Systems, ever used "customer information" that had been "initially supplied" by Plaintiff when they periodically conducted business in San Angelo, Midland, and southern New Mexico.  *See* Igoe Aff. 93.

Accordingly, the "plain language" of this contractual provision from the 2010 and 2011 versions of Defendant's Dealer Policy Manual cannot be read to prohibit those of Defendant's omissions for which Plaintiff has presented evidence to the Court.  *See Beaumont Rice Mill, Inc.*, 948 F.2d at 951 (citing *Pepper*, 339 S.W.2d at 661).  The Court therefore finds that Defendant is entitled to judgment as a matter of law that Defendant did not breach the dealership agreement by failing to prevent Accurate Business Machines and General Mailing Systems from conducting business within Plaintiff's designated territory.  *See Celotex Corp.*, 477 U.S. at 322-23; *Weaver*, 529 F.3d at 339.

The Court recalls, however, that the same language cited above regarding Defendants' commitment not to use a dealer's "customer information" for sales or maintenance contracts within a dealer's "exclusive territory" without compensation is also the basis for a second claim raised for the first time in Plaintiff's Second Amended Complaint.  In contrast to the claim considered in this Order, that claim relates to Defendant's use of Plaintiff's customer information

within Plaintiff's former territory after the termination of the dealership agreement.   The Court

emphasizes that the present Order makes no holding as to the question of Defendant's liability

for this new claim.

## 2.      The duty of good faith and fair dealing

Plaintiff also argues that Defendant has incurred liability by violating the duty of good

faith and fair dealing under Texas law.  Pl.'s Resp. 9.  Most of Plaintiff's claims for breach of

this duty simply repeat Plaintiff's claims for breach of contract: "The Defendant failed to live up

to the duty when it terminated Plaintiff without the requisite 90 days' notice . . . [and when]

Defendant failed to enforce the exclusive territory assigned to Plaintiff . . . ."  Pl.'s Resp. 9; *see*

*also* Pl.'s Second Am. Compl. 7 ("Because of the contractual breaches identified above, the

Defendant has breached its duty of good faith and fair dealing with the Plaintiff.").  The one

exception is Plaintiff's contention that Defendant "dealt with Plaintiff unfairly in the termination

process," because internal correspondence reveals that Defendant's managers had "wanted to

cancel" the dealership agreement with Plaintiff since 2009.  Pl.'s Resp. 9-10.

In Texas, "[a] common-law duty of good faith and fair dealing does not exist in all

contractual relationships."  *See Subaru of Am. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212,

225 (Tex. 2002) (citing *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415,

418 (Tex. 1995)).  In particular, the Texas Supreme Court has explicitly "declined to extend this

common-law duty to all franchise agreements . . . ."  *Id.* (citing *Crim Truck & Tractor Co. v.*

*Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595-96 (Tex. 1992)).  However, the duty of good

faith and fair dealing imposed by statute under § 1.304 of the Texas Business and Commerce

Code may apply to a "distributorship agreement" where the sale of goods is "the dominant factor

or essence" in such a contract.  *See Cont'l Casing Corp. v. Siderca Corp.*, 38 S.W.3d 782, 787

(Tex. App. 2001); *see also Graybar Electr. Co., Inc. v. LEM & Assocs., L.L.C.*, 252 S.W.3d 536, 542 (Tex App. 2008); *Tarrant Cnty. Hosp. Dist. v. GE Auto. Servs., Inc.*, 156 S.W.3d 885, 893 (Tex. App. 2005).

Even assuming without deciding, however, that the parties' dealership agreement is subject to the duty of good faith and fair dealing under Texas law, this Court finds that Plaintiff has asserted no grounds for a violation of this duty. The Texas Supreme Court has held that "[i]n the absence of a specific duty or obligation [in the contract] to which the good-faith standard could be tied, [the duty of good faith] will not support [a plaintiff's] claim for damages." *N. Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 606-07 (Tex. 1998). In other words, the "duty of good faith and fair dealing is aimed at making effective the agreement's promises." *Fetter v. Wells Fargo Bank Tex.*, N.A., 110 S.W.3d 683, 689 (Tex. App. 2003) (quoting *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 482 (Tex. App. 1989)). Under Texas law, this duty therefore "defines other duties which grow out of specific contract terms and obligations." *Mega Dev. v. FSLIC*, 983 F.2d 232, 1993 WL 4696, at *2 (5th Cir. 1993) (quoting *Adolph Coors Co.*, 780 S.W.2d at 482). However, other than those obligations arising from the terms of the contract itself, the duty of good faith "does not create any new obligations." *John Wood Grp. USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 22 (Tex. App. 2000). In *Northern Natural Gas*, for example, the duty of good faith did not require the defendant to refrain from canceling certain gas purchase contracts, since the contracts did not by their own terms obligate the defendant to continue its business relationship with the plaintiff. *N. Natural Gas Co.*, 986 S.W.2d at 606-07.

Having already found that the parties' dealership agreement imposed no obligation on Defendant to respect a ninety-day notice period or prevent territorial encroachment by Plaintiff's rival dealers, the Court therefore concludes that Defendant also had no such obligations by virtue

of the duty of good faith and fair dealing. *See John Wood Grp.*, 26 S.W.3d at 22. The Court also finds that Defendant cannot have violated the duty of good faith simply because its management had "wanted to cancel" Plaintiff's dealership agreement since 2009. *See* Pl.'s Resp. 9-10. The parties agree that Defendant set quotas for its dealers to meet, and that Plaintiff had fallen more than 75% below its quotas on various occasions between 2009 until 2011. *See* Def.'s Mot. ¶¶ 6-15; Pl.'s Resp. ¶¶ 6-15. As Defendant's policy manual provides, "[t]he Dealer's failure to meet its assigned sales quota is cause for [Defendant], upon written notice to Dealer, to terminate such dealership." Def.'s Mot. ¶ 16; Pl.'s Resp. ¶ 16; Igoe Dep. 9-11. Indeed, this was precisely the reason given for Defendant's termination of the dealership agreement. Termination Letter 8; Def.'s Mot. ¶ 21-22; Pl.'s Resp. ¶ 21-22.

Defendant is therefore entitled to judgment as a matter of law that it did not violate the duty of good faith and fair dealing with respect to the notice period, its failure to prevent territorial encroachment, or the termination of the contract itself. *See Celotex Corp.*, 477 U.S. at 322-23; *Weaver*, 529 F.3d at 339. The Court emphasizes, however, that the present Order makes no determination as to the applicability of the duty of good faith and fair dealing to the two new claims asserted in Plaintiff's Second Amended Complaint.

### 3.      Damages

As a final matter, Defendant has urged the Court to conclude broadly that Plaintiff cannot establish "that it suffered any damages," and that Defendant is consequently entitled to summary judgment as to the whole of Plaintiff's case. Def.'s Mot. 23. In its Reply, which was filed after Plaintiff requested leave to file the Second Amended Complaint, Defendant emphasized that the two new claims were "improperly" raised at this time and that damages resulting from these claims had not yet been supported by "any competent material evidence." *See* Def.'s Reply 13.

The Court denies this portion of Defendant's Motion with respect to the damages that might be based on Plaintiff's two new theories of recovery.  In its previous Order, the Court has already concluded that Plaintiff's new claims for unpaid commissions and for misuse of Plaintiff's customer information have been properly raised.  *See* Order on Pl.'s Mot. to File a Second Am. Compl.  Moreover, the parties' renewed opportunity for discovery may uncover competent evidence that is material to damages based on these two new claims.  Summary judgment on the damages aspect of these claims is therefore premature and must be denied.

## III.    CONCLUSION

For the reasons set forth above, the Court **ORDERS** that Defendant's Motion for Summary Judgment, ECF No. 29, is hereby **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant's Motion is **GRANTED** with respect to Plaintiff's claim for breach of contract based on Defendant's failure to provide Plaintiff with adequate notice prior to termination of the dealership agreement.

**IT IS FURTHER ORDERED** that Defendant's Motion is **GRANTED** with respect to Plaintiff's claim for breach of contract based on Defendant's failure to prevent territorial encroachment by Plaintiff's rival dealers.

**IT IS FURTHER ORDERED** that Defendant's Motion is **GRANTED** with respect to Plaintiff's claim for Defendant's failure to comply with the duty of good faith and fair dealing with respect to adequate notice prior to termination of the dealership agreement and the prevention of territorial encroachment by Plaintiff's rival dealers.

**IT IS FURTHER ORDERED** that Defendant's Motion is **DENIED** with respect to Plaintiff's inability to show damages as to the two newly raised claims in Plaintiff's Second Amended Complaint.

19

**SO ORDERED.**

**SIGNED** on this 28th day of March, 2013.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE